**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

SCOTTSDALE INSURANCE COMPANY §
§
§
v. §
§
§
ALL CITIZENS TRANSPORTATION, §
LLC, ET AL. §   CIVIL NO. 4:19-CV-010-SDJ
§
v. §
§
§
BURNS & WILCOX OF TEXAS, INC., ET §
AL. §

**MEMORANDUM OPINION & ORDER**

Early in the morning on December 14, 2014, an All Citizens Transportation,

LLC ("All Citizens") van driven by Vivence Bugilimfura tragically crashed into a

barrier wall along State Highway 183, injuring all passengers on board, two fatally.

The surviving passengers and the deceased passengers' estates filed a state court

lawsuit against All Citizens, its sole member, Janvier Bugosi, and Bugilimfura

(collectively, the "Judgment Debtors").[1] That lawsuit resulted in a $17.5 million

judgment against the Judgment Debtors for damages in favor of each of the

passengers or their estates,[2] for which the Judgment Debtors are jointly and severally

---

[1] *Igihozo v. Bugilimfura*, No. DC-16-09739 (Dallas Cty. Dist. Ct.).

[2] Anny Igihozo, Liberatha Mukagasana, Robert Masunzu, Christella Kajyambere, Blanche Gahozo, Robert Masunzu, Ornella Mugabo, Bonaventure Niyibizi, and Cedric Somayire (collectively, the "Judgment Creditors").

1

liable. (Dkt. #62-6, Ex. F). The state court later entered a turnover order providing that all of the Judgment Debtors' potential claims against Scottsdale Insurance Company ("Scottsdale"), All Citizens' prior insurer, be turned over to the Judgment Creditors. (Dkt. #62-7, Ex. G).

Following the turnover order, Scottsdale filed this declaratory action against both the Judgment Debtors and the Judgment Creditors, seeking a declaration of no coverage regarding All Citizens. Scottsdale asserts that, although All Citizens previously had multiple vehicles insured with Scottsdale during the relevant time period, that policy had been canceled and no policy was in force at the time of the accident. The Judgment Creditors filed counterclaims in response to Scottsdale's declaratory action, asserting various state-law causes of action, including breach of contract, violations of the Texas Insurance Code, and breach of the *Stowers* duty to settle. (Dkt. #31). The Judgment Creditors also filed third-party claims against insurance agencies Burns & Wilcox of Texas ("B&W")[3] and English Insurance Company d/b/a the Klement Agency ("Klement"), as well as a premium financing company, Capital Premium Financing, Inc. ("Capital") for breach of contract, breach of fiduciary duty, negligence, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). (Dkt. #31).

Scottsdale moves for summary judgment, arguing that because the All Citizens insurance policy at issue had been canceled, effective November 30, 2014, All Citizens

---

[3] B&W Insurance Group, L.P. is the surviving entity of a merger that included Burns & Wilcox of Texas, Inc., and is the proper name of the party in this suit. (Dkt. #66 ¶ 2).

had no coverage with Scottsdale for any claims pertaining to the December accident. (Dkt. #54); *see also* (Dkt. #65). The Judgment Creditors respond that the purported cancellation was ineffective. (Dkt. #62).

The Court, having considered the motion, the record, and the applicable law, finds that Scottsdale has produced evidence, not subject to any genuine dispute, that conclusively demonstrates that All Citizens' insurance policy with Scottsdale was canceled on November 30, 2014, and that no coverage was in place on December 14, 2014. Further, because no policy was in place at the time of the accident, there can be no valid claims against Scottsdale for breach of contract, violations of the Texas Insurance Code, or breach of the *Stowers* duty. The motion for summary judgment, (Dkt. #54), is therefore **GRANTED**, and the counterclaims, (Dkt. #31), are **DISMISSED**. Finally, because the Court has disposed of all claims between the Plaintiff and the Defendants over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining third-party claims. Accordingly, the third-party claims are **DISMISSED without prejudice**.

## I. BACKGROUND

All Citizens is in the non-emergency medical transport business. Several of its vehicles were insured under a commercial auto insurance policy, Policy CAS0100761 ("the Policy"), issued by Scottsdale. The Policy was effective from June 10, 2014 to June 10, 2015, and covered up to $500,000 of bodily injury and/or property damage per incident caused by an accident resulting from use of a covered vehicle, including

All Citizens' 2014 Dodge Caravan involved in the accident on December 14, 2014. The Judgment Creditors contend that B&W and Klement sold the Policy to All Citizens.

All Citizens financed the Policy through Capital, a premium financing company. Capital paid the Policy premiums to Scottsdale in advance, and All Citizens was obligated to make monthly payments to Capital. As part of the financing agreement, Capital had power of attorney with a right to cancel the Policy in the event of non-payment and to receive returned, unearned premiums in the event of cancellation. Capital canceled the Policy multiple times based on delinquent payments from All Citizens. On August 6, 2014, and again on October 3, 2014, Capital sent notices of cancellation to Scottsdale due to All Citizens' failure to pay premiums. Both times, Scottsdale canceled the Policy. In each of these instances of cancellation, once All Citizens eventually made its late payment to Capital, Capital sought and successfully obtained reinstatement of the Policy by Scottsdale. However, after the second reinstatement, Scottsdale informed Capital that it would not reinstate the Policy if it received a third notice of cancellation.

When All Citizens needed to make another late payment, Capital agreed to hold the notice of cancellation until December 9, 2014, in anticipation of payment. Capital's accounting system, however, missed the hold, and Capital sent a Notice of Cancellation to all parties on December 4, 2014. Capital's Notice of Cancellation stated that the Policy was canceled effective November 30, 2014. The Policy's "Cancellation" provision states that a notice of cancellation "will state the effective

date of cancellation," and "[t]he policy period will end on that date." Consistent with the Policy's "Cancellation" provision and Capital's power of attorney authorizing it to cancel the Policy, Scottsdale endorsed the Policy to reflect its cancellation as of November 30, 2014.[4]

After Capital sent a reinstatement request on December 5, 2014, Scottsdale confirmed on December 8 that the Policy was canceled as of November 30, that this was the third notice of cancellation, and that the Policy would not be reinstated. Less than one week later, on December 14, 2014, All Citizens' 2014 Dodge Caravan was involved in the deadly crash underlying the dispute.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, F.3d 1285, 1295 (5th Cir. 1994)).

"[T]he mere existence of *some* alleged factual dispute[,]" however, is insufficient to defeat a motion for summary judgment—"the requirement is that there

---

[4] Scottsdale also returned the unpaid portion of the premium to Capital.

be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476. If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. DISCUSSION

### A. Scottsdale's Motion for Summary Judgment

Scottsdale moves the Court to enter summary judgment on its affirmative claim for declaratory relief and on all counterclaims asserted against it, arguing that there was no coverage in place on the date that the accident occurred and that, because there was no coverage, the extra-contractual claims brought against it fail as a matter of law.

Scottsdale has produced evidence showing that the Policy could be canceled by "mailing or delivering to [Scottsdale] advance written notice of cancellation," (Dkt. #54-1, Ex. A at 10), and that Capital had power of attorney to cancel the Policy on behalf of All Citizens, (Dkt. #54-2, Ex. B). The date of cancellation of a financed

policy is provided for in 28 Tex. Admin. Code § 25.59(a), "unless otherwise stated in the insurance policy." In this case, the Policy provided that the policy period would end on the date stated as the effective date of cancellation on the notice of cancellation. (Dkt. #54-1, Ex. A at 10). Scottsdale produced evidence that the Policy was canceled by Capital effective November 30, 2014—nearly two weeks before the accident at issue. (Dkt. #54-1, Ex. A at 77); (Dkt. #54-5, Ex. B-4). Neither party disputes this evidence. All Citizens was, therefore, without coverage at the time of the accident unless some fact or circumstance undermined the validity of the cancellation, as the Judgment Creditors argue.

In the face of the described evidence showing that All Citizens had no insurance coverage with Scottsdale at the time of the December accident, the Judgment Creditors advance two arguments. First, the Judgment Creditors argue that Scottsdale failed to meet certain statutory obligations related to policy cancellation, and, therefore, it could not effectively cancel the Policy. Second, the Judgment Creditors alternatively argue that, even if Scottsdale could have effectively canceled the Policy on November 30, 2014, there is a fact question as to whether Scottsdale actually canceled it because records produced suggest that a notice of intent to cancel was sent to All Citizens after the accident, on December 22, 2014. The Court will address each argument in turn.

### 1. Scottsdale's alleged failure to meet statutory prerequisites for policy cancellation

The Judgment Creditors assert that Capital's mistaken issuance of the notice of cancellation both violated Texas law and prevented Scottsdale from effectively canceling the Policy. The Judgment Creditors point to section 651.161 of the Texas Insurance Code, which requires premium finance companies like Capital to "mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default in payment unless the default is cured at or before the time stated in the notice." TEX. INS. CODE ANN. § 651.161(b). The Insurance Code further provides that the cancellation date "may not be earlier than the 10th day after the date the notice is mailed." *Id.* "After the time stated in the notice required by [section 651.161(b)], the insurance premium finance company may cancel each applicable insurance contract by mailing a notice of cancellation to the insurer." *Id.* § 651.161(d).

The Judgment Creditors also cite section 25.59(a) of the Texas Administrative Code, which implements section 651.161's provisions requiring premium finance companies to provide notice of cancellation because of default. Section 25.59(a) specifies that the premium finance company's notice of cancellation because of default "shall be titled 'Notice of Cancellation,' and may not be sent to the insurer before the ten-day waiting period of the notice of intent-to-cancel has expired."

It is undisputed that Capital failed to meet the requirements of section 651.161 of the Texas Insurance Code and section 25.59(a) of the Texas Administrative Code

8

because it sent the cancellation notice to Scottsdale without first sending the notice of intent to cancel to All Citizens. According to the Judgment Creditors, because Capital failed to fulfill its statutory obligation to send a notice of intent to cancel prior to sending a notice of cancellation, Scottsdale, in turn, could not effectively cancel the Policy. The question before the Court, therefore, is whether an insurance company may cancel a policy despite a premium finance company's failure to meet notice-of-cancellation requirements imposed by Texas law. The answer is yes.

Regulation of the insurance industry is a matter of state law. And "[i]t is more than well-known that, when, as here, diversity of citizenship is the basis of federal jurisdiction, [federal courts] must apply state law 'as announced by that state's highest court, or in the absence of such a decision, [the court] must predict what the highest court would decide if it confronted the same issue.'" *City of San Antonio v. Hotels.com, L.P.*, 876 F.3d 717, 722 (5th Cir. 2017) (quoting *In re Complaint of John E. Graham & Sons*, 210 F.3d 333, 337 (5th Cir. 2000)). Accordingly, when a state's highest court has yet to speak on an issue, a federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940) (citations omitted).

Although the question before the Court has not been resolved by the Texas Supreme Court, Texas's Third Court of Appeals has squarely addressed the issue. *See Plasma Fab, LLC v. BankDirect Capital Fin., LLC*, 468 S.W.3d 121, 131–32 (Tex.

App.—Austin 2015), *aff'd on other grounds*, 519 S.W.3d 76 (Tex. 2017) (holding that the insurer's "cancellation [of the policy] was effective regardless of [the premium finance company's] failure to comply with the statutory notice requirements"). The players and setting in *Plasma Fab* are nearly identical to those presented here: an insured was habitually late in repaying the premium finance company that financed its insurance policy, leading the premium finance company to send notices of cancellation and subsequent requests for reinstatement. *Id.* at 124. Rather than failing to send a notice of intent to cancel at all, as in the instant case, the premium finance company in *Plasma Fab* sent a notice of intent to cancel following the third delinquency that noted a date of cancellation that was nine days after the notice was sent, rather than the statutorily mandated ten. *Id.* When the insured's building was destroyed in a fire four days after the noted effective date of cancellation, the insured sued the insurer on the grounds that the insurer's cancellation was ineffective because, as in the instant case, it had not ensured the premium finance company's compliance with statutory cancellation requirements. *Id.* at 129–30. The *Plasma Fab* court held that the insurer "had no obligation to verify [the premium finance company's] compliance with statutory notice requirements" and that the cancellation was effective. *Id.* at 131.

In so holding, the *Plasma Fab* court reasoned that the Premium Finance Act, TEX. INS. CODE ANN. §§ 651.001–.209, which regulates premium finance companies, "must be read as a whole according to its plain language and ordinary meaning."

10

468 S.W.3d at 130 (citing *Zanchi v. Lane,* 408 S.W.3d 373, 376 (Tex. 2013); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 624 (Tex. 2011)). Further, the court held that the plain language of the specific statute at issue, section 651.161(a), only regulated premium finance companies and not insurers. *Id.* at 131 ("[A] premium finance company may not cancel a policy except as provided by that section, [which] comports with the Act's function of regulating premium finance companies, not insurers." (emphasis omitted)). With this understanding of the statute, the *Plasma Fab* court reached its conclusion that reading additional statutory requirements that flowed to insurers into section 651.161 would "torture" its ordinary meaning. *Id.*

This Court is bound to follow the *Plasma Fab* court's precedent "absent convincing evidence" that the Texas Supreme Court would rule differently. There is no reason to believe that it would. The *Plasma Fab* court's refusal to read words into section 651.161 comports with the Texas Supreme Court's consistent guidance that Texas courts should "decline to second-guess the Legislature's policy choice by adding language to an unambiguous statute." *City of Houston v. Jackson*, 192 S.W.3d 764, 774 (Tex. 2006); *see also, e.g., Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) ("If the statute's language is unambiguous, its plain meaning will prevail.").

Challenging the *Plasma Fab* court's reasoning, the Judgment Creditors cite section 651.161(f) of the Texas Insurance Code and section 25.59(a) of the Texas Administrative Code. Taken together, the Judgment Creditors argue, these

provisions of Texas law require insurers to send a notice of cancellation to the insurance agent—a third party—along with a calculated effective date of cancellation. The Judgment Creditors conclude that Scottsdale's alleged failure to undertake these actions precluded it from canceling All Citizens' policy. This is a misreading of Texas law.

To begin with, as the Texas Supreme Court has explained, when construing Texas statutes, "context matters." *City of Houston v. Bates*, 406 S.W.3d 539, 545 n.2 (Tex. 2013). Chapter 651 of the Texas Insurance Code concerns the regulation of insurance premium financing and is particularly focused on the operation of insurance premium finance companies, not insurers. Subchapter D of Chapter 651, entitled "Premium Finance Agreements," sets forth, among other things, the required form and contents of premium finance agreements, *see* TEX. INS. CODE ANN. § 651.151, the allowance of default charge provisions in premium finance agreements, *id.* § 651.159, and the statutory authorization for premium finance companies to secure a power of attorney from insureds, enabling premium finance companies to cancel insurance contracts on behalf of insureds, *id.* § 651.160. In the limited instances in which subchapter D imposes new duties on entities *other than* insurance premium finance companies, the Texas legislature specifically and unambiguously imposed such new duties. For example, section 651.155, entitled "Responsibilities of Insurance Agent," states that an insurance agent shall "(1) prepare a premium finance agreement; and (2) deliver to the insured each disclosure statement required by law."

Section 651.161, entitled "Cancellation of Contract," includes six subsections, denominated (a) through (f), addressing an insurance premium finance company's cancellation of an insurance policy. *See id.* § 651.161(a)–(f). As particularly relevant here, section 651.161(b) states that the premium finance company must provide a notice of intent to cancel to the insured, with a specified cancellation date no earlier than ten days after the notice is mailed, and section 651.161(c) states that the finance company must also provide a copy of the intent-to-cancel notice to "the insurance agent or broker identified in the premium finance agreement." Under section 651.161(d), once the time period stated in the intent-to-cancel notice has passed, the premium finance company may cancel the insurance policy by providing notice to the insurer. Finally, under section 651.161(e), the premium finance company must also provide notice of the cancellation to the insured and, as with the intent-to-cancel notice, the premium finance company must also provide notice of cancellation to "the insurance agent or broker identified in the premium finance agreement."

None of these provisions impose any notification requirement on the insurer. Nor does section 25.59(a) of the Texas Administrative Code. Section 25.59(a) merely implements the notice requirements imposed by section 651.161 on premium finance companies, providing, for example, that the premium finance company's intent-to-cancel notice "shall be titled 'Notice of Cancellation'" and confirming that copies of the notice must be must be sent to "the insured, the insurance agent, and the insured's permanent account file." *See* 28 TEX. ADMIN. CODE § 25.59(a) (located in

Chapter 25, entitled "Insurance Premium Finance"). Section 25.59(a) further provides that the policy cancellation date "shall be the day following receipt of the notice of cancellation issued by the premium finance company or the date specified in the notice of cancellation, whichever is later, *unless otherwise stated in the insurance policy or by applicable law*." *Id.* (emphasis added). Here, the All Citizens' policy, which is controlling, provided that the policy period would end on the date stated as the effective date of cancellation on the notice of cancellation. (Dkt. #54-1, Ex. A at 10).

In short, both sections 651.161(c) and (e), as well as section 25.59(a) of the Texas Administrative Code, impose on the premium finance company, not the insurer, the obligation to provide applicable cancellation notifications to both the insured and the insurance agent. Nonetheless, the Judgment Creditors contend that Insurance Code section 651.161(f) and Administrative Code section 25.59(a) also require the insurer to provide notice of cancellation to the insurance agent. Not so.

Section 651.161(f) states that any existing "statutory, regulatory, or contractual restriction that provides that an insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party" applies to section 651.161. Section 651.161(f) goes on to provide that, if such notice must be made, the insurer will provide the notice to the third party and will "determine the effective date of cancellation." As its text reveals, the notice requirement in section 651.161(f) does not create any new duty for insurers. *See Ins.*

14

*Co. of N. Am. v. Aberdeen Ins. Servs., Inc.*, 253 F.3d 878, 884 (5th Cir. 2001).[5] Instead, section 651.161(f) ensures that previously existing notice requirements apply equally in the context of a cancellation effectuated by a premium finance company. For example, under section 651.161(f), if an insurance policy provision required a mortgagee to be notified by the insurer in the event of a policy cancellation, that requirement would remain in effect even if the policy was canceled by a premium finance company acting on behalf of its insured. Section 651.161(f) is inapplicable here because the parties have not identified any statutory, regulatory, or contractual restriction providing that the All Citizens' insurance policy "[could] not be canceled unless notice is given to a governmental agency, mortgagee, or other third party." *See* TEX. INS. CODE ANN. § 651.161(f).

The Judgment Creditors nonetheless assert that the term "other third parties" in section 651.161(f) embraces insurance agents, and that Scottsdale therefore had an independent obligation to provide the applicable cancellation notifications to the insurance agents in this case. This reading of the statute cannot be reconciled with

---

[5] The Judgment Creditors urge the Court to discount the analysis in *Insurance Co. of North America v. Aberdeen Insurance Services, Inc.*, claiming that the *Aberdeen* court considered a prior version of the statute that is inapplicable here because it "omits the language from Section 651.151(f) [sic] that regulatory restrictions apply to that section; . . . predates the adoption of 28 TEX. ADMIN. CODE § 25.59(a); . . . and (3) predates the Texas Supreme Court's opinion in *BankDirect Capital Fin. LLC v. Plasma Fab, LLC*, 519 S.W.3d 76 (Tex. 2017), which require the [sic] Section 651.151 [sic] be strictly construed." (Dkt. #62 at 6). The Court finds no reason not to consider the *Aberdeen* court's analysis in this case. The statutory language is nearly identical and specifically contemplates regulatory restrictions. That section 25.59(a) was later enacted and that the Texas Supreme Court later held that section 651.161 should be strictly construed as to the requirements placed on premium finance companies are irrelevant to the analysis because section 25.59(a) does not regulate insurers.

its text and structure. As the Court has explained, sections 651.161(c) and (e), as well as section 25.59(a) of the Texas Administrative Code, unambiguously impose on the premium finance company, not the insurer, the obligation to provide applicable cancellation notifications to both the insured and the insurance agent. The Texas legislature elected to include specific provisions in section 651.161 referencing notification to insurance agents of policy cancellation by a premium finance company, and further opted to impose such notification obligations only on premium finance companies.

### 2. There is no genuine issue of material fact that the Policy was canceled prior to the December accident.

The Judgment Creditors alternatively argue that, even if Scottsdale could have canceled the policy, there is a fact question as to whether it actually did so. This theory turns on a document produced by Scottsdale, specifically a notice history log, that indicates an "intent to cancel" document was sent to All Citizens on December 22, 2014. The story seems to be that perhaps Scottsdale sent an "intent to cancel" notice on December 22, after the December accident. The Judgment Creditors maintain that this evidence is sufficient to introduce a question of fact as to whether Scottsdale actually canceled the Policy prior to the December accident.[6] *See* (Dkt. #62-3, Ex. C at 7). The Court disagrees.

---

[6] Scottsdale objects to the inclusion of the notice history log, Exhibit C to the Judgment Creditors' summary judgment response, as hearsay. The Court overrules Scottsdale's objection and will consider Exhibit C to the extent that it creates a question of fact as to whether the Policy was canceled. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106

Although Scottsdale produced the notice history log during discovery, Scottsdale submitted an affidavit confirming that the document is not a Scottsdale-created record, but rather a business record of Capital, the premium finance company. (Dkt. #65-1, Ex. E). The information included in the log confirms the accuracy of this explanation. The log itself is identified as "Notice History for Account #125477." As multiple other documents submitted to the Court establish, Capital's records identify All Citizens' premium finance loan as "Loan Number 125477." *See, e.g.*, (Dkt. #54-1, 54-2, 54-3, 54-4, 54-5) (notices sent by Capital).

The notice history log records the time, date, and method of delivery of various notices, statements, and requests that were sent by the entity maintaining the log for "Account #125477" during the time period relevant to this case. The documents issued by the sender, and recorded in the log, include notices of financed premium, notices of intent to cancel, cancellation notices, and reinstatement requests. All of these types of notices or requests would be sent by a premium finance company like Capital, not an insurer. The log also records the recipients of the various referenced notices and requests. The recipients include all the other players in this case *except* Capital. Thus, there are numerous entries for documents sent to All Citizens, the insurance agencies, and Scottsdale, which is identified as an "Ins. Co." in the log. *See* (Dkt. #62-3, Ex. C). It would make little sense for Scottsdale to log itself as a recipient for a notice it was sending. Unsurprisingly, there is not a single entry in the log

---

S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

showing Capital as a recipient. Removing any remaining doubt as to the source of the notice history log relied upon by the Judgment Creditors, a number of log entries correspond directly to notices and requests sent by Capital that are found elsewhere in the record. *Compare, e.g.*, (Dkt. #54-4, Ex. B-3) (faxed Notice of Cancellation from Capital to Scottsdale received on October 2, 2014), *with* (Dkt. #62-3, Ex. C at 5) (notice history log entry of faxed Notice of Cancellation to Scottsdale sent on October 2, 2014). In light of the foregoing, the Court concludes that the evidence is clear that the log was kept by Capital and reflected notices, requests, and other materials sent by Capital to All Citizens, Scottsdale, and others regarding Capital's premium finance agreement with All Citizens.

The fact that Capital's notice history log includes entries identifying an "intent to cancel" document purportedly sent to All Citizens and Klement on December 22, 2014, fails to create any genuine issue of material fact that Scottsdale had already canceled the Policy effective November 30, 2014. First, other than the log entry, there is no evidence of the "intent to cancel" document. Second, an "intent to cancel" notice in this context would be created by the *premium finance company*, i.e., Capital, not an insurer. *See* 28 TEX. ADMIN. CODE § 25.58 (providing that a premium finance company's "notice of intent-to-cancel insurance because of default, as provided by the power of attorney agreement, shall be titled 'Notice of Intent to Cancel' and shall be sent to the insured"). Thus, the assertion that the log entries somehow reflect an

action by *Scottsdale* that is inconsistent with its prior cancellation of the Policy cannot withstand scrutiny.

Finally, the question of whether Capital did or did not belatedly generate a "notice of intent-to-cancel" document on December 22, 2014, does not undermine the undisputed and uncontroverted evidence submitted by Scottsdale establishing that (1) the Policy expressly allowed for cancellation by the insured, All Citizens, (2) Capital had a power of attorney allowing it to cancel the Policy on behalf of All Citizens, (3) Capital issued a notice of cancellation on December 4, 2014, stating that the Policy was canceled effective November 30, 2014, and (4) consistent with the Policy's provision stating that the policy period would end on the effective date provided in a notice of cancellation, Scottsdale endorsed the Policy to provide that All Citizens' coverage ended on November 30, as stated in Capital's notice of cancellation. Further, the referenced notice history log entries made by Capital do not undermine the additional, undisputed facts that, on December 8, Scottsdale confirmed that the Policy would not be reinstated, and that All Citizens was without coverage as of November 30, 2014.

\*       \*       \*

For the reasons stated above, the Court finds that Scottsdale has met its burden of establishing that it canceled All Citizens' commercial auto policy, effective November 30, 2014, and that there was no coverage in place on December 14, 2014, the date of the accident. Further, because no coverage was in place, the Judgment

Creditors' breach of contract and extra-contractual counterclaims fail as a matter of law. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 491 (Tex. 2018) (quoting *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010)) ("'When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive,' and there is 'no liability under [the Insurance Code] if there is no coverage under the policy.'" (alteration in original)). Scottsdale's motion for summary judgment is therefore GRANTED, and the counterclaims against Scottsdale are DISMISSED.

## B. Supplemental Jurisdiction

Remaining before the Court are the Judgment Creditors' claims against the Third-Party Defendants. (Dkt. #31). The Court had diversity jurisdiction over this case when it was originally filed because complete diversity existed between Plaintiff Scottsdale and the Defendants. (Dkt. #46). The Court then exercised supplemental jurisdiction over the Judgment Creditors' state-law claims against the Third-Party Defendants, despite lacking complete diversity, under 28 U.S.C. § 1367(a).[7] In light of the Court's disposition of Scottsdale's motion for summary judgment, the Court must now determine whether it should retain supplemental jurisdiction over the state-law claims against the Third-Party Defendants.

Federal courts have broad discretion in determining whether to retain a case under supplemental jurisdiction after "the federal basis for an action drops away."

---

[7] Defendants/Third-Party Plaintiffs Anny Igihozo, Christella Kajyambere, Blanche Gahozo, and Robert Masunzu are each citizens of Texas, as are Third-Party Defendants B&W and Klement.

*Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). To determine whether it "may decline to exercise supplemental jurisdiction over a claim," a federal district court should consider whether:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has instructed courts to also consider the common law factors of "judicial economy, convenience, fairness, and comity" when determining whether to retain supplemental jurisdiction over a state-law claim. *Enochs v. Lampasas Cty.*, 641 F.3d. 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Weighing all factors together, with no single factor dispositive, the court should determine whether the overall balance favors declining jurisdiction while "guard[ing] against improper forum manipulation." *Id.* However, "in the usual case in which all federal-law claims are eliminated before trial," the common-law factors "will point toward declining to exercise [supplemental] jurisdiction." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

As discussed above, the Court will grant summary judgment in favor of Scottsdale and dismiss the counterclaims against it. *See supra* Section III(A). Because causes of action over which this Court had original jurisdiction no longer remain in the case, the Court may decline to exercise supplemental jurisdiction over the third-party claims for which it does not have original jurisdiction, subject to concerns regarding judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (reiterating that supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right"). The Court finds that no factor weighs in favor of exercising supplemental jurisdiction.

First, although this case has been pending for just over a year, the Third-Party Defendants were joined several months later, in June 2019. The claims against the Third-Party Defendants have progressed only to the motion to dismiss stage, (Dkt. #67), and the Court recently issued a new scheduling order to accommodate the new parties in December, (Dkt. #92). This factor is therefore neutral.

Second, this case can proceed with equal convenience and without prejudice to either party in state court, as the litigation has not progressed very far and any discovery or briefing already completed on the remaining claims may be used in state court. Both the convenience and fairness factors are therefore neutral.

Third, the comity factor weighs in favor of declining to exercise supplemental jurisdiction over the state-law claims, as it is preferable for state-law claims to be

adjudicated in state court. *See Gibbs*, 383 U.S. at 726 (explaining that comity is a factor in determining whether a federal court should retain supplemental jurisdiction over state-law claims because of a desire to avoid "needless decisions of state law"). Because no claim over which this Court has original jurisdiction remains in the case and the common-law factors weigh in favor of declining to exercise supplemental jurisdiction over the remaining state-law claims, the Court will not exercise supplemental jurisdiction over the remaining claims.

## IV. Conclusion

For the reasons stated above, it is **ORDERED** that Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment, (Dkt. #54), is hereby **GRANTED**. It is further **ADJUDGED and DECLARED** that Scottsdale Insurance Policy No. CAS0100761, identifying All Citizens Transport, LLC as named insured, was effectively canceled as of November 30, 2014. The Court further **ADJUDGES and DECLARES** that any claim by any party to this lawsuit arising from or relating to the automobile accident involving Judgment Creditors and Judgment Debtors that occurred on or about December 14, 2014, is not covered under said policy. It is, therefore, **ORDERED**, **ADJUDGED**, **and DECREED** that all counterclaims asserted against Plaintiff Scottsdale Insurance Company, (Dkt. #31), are **DISMISSED**.

It is further **ORDERED** that Defendants Anny Igihozo, Liberatha Mukagasana, Christella Kajyambere, Blanche Gahozo, Robert Masunzu, Ornella

Mugabo, Bonaventure Niyibizi, and Cedric Somayire's third-party claims against B&W Insurance Group, L.P., English Insurance Agency, Inc. d/b/a The Klement Agency, and Capital Premium Financing, Inc., (Dkt. #31), are **DISMISSED without prejudice** to their refiling in an appropriate state court.

It is further **ORDERED** that all relief not previously granted is hereby **DENIED as moot**.

The clerk is directed to close this civil action.

**So ORDERED and SIGNED this 24th day of April, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

24